**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARCLAY TRANSPORTATION,** | : | |
| **Plaintiff** | : | **Civil Action No. 1:07-cv-02065** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **LAND O'LAKES, INC.,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

Plaintiff Barclay Transportation ("Barclay") initiated the above-captioned action on

November 14, 2007, with the filing of a complaint against Defendant Land O'Lakes, Inc.

(Doc. No. 1.)  In its complaint, Barclay claims monetary damages in excess of $75,000 for losses

allegedly sustained when one of its tractor trailers capsized in a water-filled pothole at a butter

processing plant owned by Land O'Lakes.  (Id.)  Before the Court are Barclay's motion for entry

of default judgment (Doc. No. 14) and Land O'Lakes' motion (Doc. No. 16) for leave to file its

answer (Doc. No. 13) nunc pro tunc.  Both motions are fully briefed and ripe for disposition.  For

the reasons that follow, the Court will deny Barclay's motion for entry of default judgment, grant

Land O'Lakes' motion for leave to file its answer nunc pro tunc, and direct the Clerk of Court to

set aside the entry of default.

## I.     BACKGROUND

On January 28, 2008, Barclay filed an request for entry of default with the Clerk of Court

in which it attested that Land O'Lakes had waived service of summons and failed to answer the

complaint within the allowed sixty-day period.  (Doc. No. 10.)  That same day, Barclay filed the

instant motion for entry of default judgment (Doc. No. 14), and, on January 29, 2008, the Clerk

entered default against Land O'Lakes (Doc. No. 12).  Spurred to action, Land O'Lakes filed an

answer with affirmative defenses "less than one hour after counsel first became aware of the

attempted default judgment." (Doc. No. 16, at 3; Doc. No. 13.)  The following day, Land

O'Lakes filed two motions: first, the instant motion for leave to file its answer nunc pro tunc

(Doc. No. 16) and, second, a motion styled "Motion to Strike the Notice of Entry of Judgment

Entered by the Clerk on January 29, 2008" (Doc. No. 17), which—owing to the fact that the

Clerk had entered default, not default judgment—was obviously premature.  Land O'Lakes

subsequently withdrew the latter motion.  (Doc. Nos. 17, 22, 26; see also Doc. No. 23, at 4 n.5.)

Barclay and Land O'Lakes have since filed briefs in support (Doc. Nos. 21, 24), briefs in

opposition (Doc. Nos. 23, 29), and reply briefs (Doc. Nos. 28, 30) in connection with the instant

motions (Doc. No. 14, 16).

II.     DISCUSSION

        Federal Rule of Civil Procedure 55 describes a straightforward, two-step process for

obtaining default judgment.  See Fed. R. Civ. P. 55.  "The first step, entry of default, is a

ministerial matter performed by the clerk and is a prerequisite to a later default judgment."

10 James Wm. Moore et al., Moore's Federal Practice § 55.10[1] (3d ed. 2007).  No motion is

needed and no order is involved.  Quite simply, a failure "to plead or otherwise defend . . . is

shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).

If the default judgment is properly requested and the claim is for a sum certain, the clerk will

proceed to the second step, entry of a default judgment for damages and costs.  Id. § 55.20[1].

Such situations are rare, however, and "in the vast majority of cases, a judicial determination is

necessary to decide the extent of the injury or the valuation of the plaintiff's loss."  Id.

§ 55.20[2].

Entry of default does not entitle a claimant to default judgment as matter of right. <u>Id.</u> § 55.31[1]. Even when a party has defaulted and all of the procedural requirements for a default judgment are satisfied, the decision to either render default judgment or refuse to render default judgment, setting aside an entry of default and allowing the case to proceed on the merits, rests in the sound discretion of the district court, <u>United States v. $55,518.05 in U.S. Currency,</u> 728 F.2d 192, 194 (3d Cir. 1984). The Third Circuit Court of Appeals, like the vast majority of courts, has explicitly adopted a policy disfavoring default judgments and encouraging decisions on the merits. <u>Harad v. Aetna Cas. and Sur. Co.</u>, 839 F.2d 979, 982 (3d Cir. 1988) (citation omitted). Thus, "[i]n a close case, doubts should be resolved in favor of setting aside the default and reaching the merits." <u>Zawadski de Bueno v. Bueno Castro</u>, 822 F.2d 416, 420 (3d Cir. 1987).

In determining whether to grant or deny a motion to enter default judgment under Federal Rule of Civil Procedure 55, district courts must consider three factors: (1) whether the defendant has a meritorious defense; (2) whether the default was the result of the defendant's culpable conduct; and (3) whether the plaintiff will be prejudiced by denying the motion. <u>See</u> <u>Farnese v. Bagnasco</u>, 687 F.2d 761, 764 (3d Cir. 1982). District courts must make explicit findings with respect to each of the three factors. <u>Emcasco Ins. Co. v. Sambrick</u>, 834 F.2d 71, 74 (3d Cir. 1987). Finally, while the factors evaluated in adjudicating a motion for default and a motion for default judgment are generally regarded as interchangeable, several courts in this circuit have come to the conclusion that "courts are willing to grant relief from a default entry more readily and with a lesser showing than they are in the case of a default judgment." <u>In re Matter of Bernstein</u>, 113 B.R. 172, 174 (Bankr. D.N.J. 1990) (quoting 10A Charles Alan Wright et al.,

Federal Practice and Procedure § 2692 (3d ed. 1998).  See, e.g., Mike Rosen & Associates, P.C. v. Omega Builders, Ltd., 940 F. Supp. 115, 120–21 (E.D. Pa. 1996) (remarking that "there is substantial authority that a lesser showing is required to set aside the entry of a default"); but see, e.g., Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656 (3d Cir. 1982) ("Although as we have noted the standards for [passing upon default and default judgments] are not always the same, we believe that the three factors . . . should be applied in both situations.").

### A.       Excusable Neglect

Barclay sent a waiver of service request to Land O'Lakes on November 20, 2007.[1] (Doc. Nos. 7, 14, 19.)  Counsel for Barclay attests, and Land O'Lakes does not dispute, that he and counsel for Land O'Lakes discussed the possibility of a settlement during a telephone call on or about December 20, 2007.  (Doc. No. 21, at 2.)  Counsel for Barclay further attests that he twice contacted counsel for Land O'Lakes to inquire as to the whereabouts of the waiver of service request, which the latter did not return until January 8, 2008.  (Id., at 2-3.)  Pursuant to Federal Rule of Civil Procedure 12, Land O'Lakes had until January 21, 2008, to file its answer. See Fed. R. Civ. P. 12 ("A defendant must serve an answer . . . within 60 days after the request

---

[1] The docket text for the waiver of service incorrectly states "Land O'Lakes, Inc. waiver sent on 11/26/2007, answer due 1/25/2008."  (Civil Docket for M.D. Pa. Case No. 1:07-cv-02065.)  The waiver itself, signed by counsel for Land O'Lakes, states "I understand that a judgment may be entered against me . . . if an answer or motion under Rule 12 is not served upon you within 60 days after 11/20/07 (date request was sent) . . . ."  (Doc. No. 7, at 1.) Consistent with the waiver, Barclay alleges in its motion for entry of default judgment that, docket text notwithstanding, "[Land O'Lakes'] sixty (60) day time period began to run on November 20, 2007" (Doc. No. 14, 1), an allegation which Land O'Lakes deems "admitted" in its brief (Doc. No. 19, at 1).  The Court therefore finds that Land O'Lakes timely waived service on November 20, 2007.

for a waiver was sent . . . .").  Nevertheless, Land O'Lakes did not file its answer until January

29, 2008, eight days late.  (Doc. No. 13.)

      In the context of default, "culpable conduct means actions taken willfully or in bad faith."

Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 124 (3d Cir. 1983).  More than mere

negligence is required.  Id.  As to why Land O'Lakes filed its answer ten days late, counsel for

Land O'Lakes avers that, "while focusing on possible early resolution of this case through

settlement negotiations, [he] inadvertently did not diary the deadline for filing the Answer to the

Complaint on his calendar, as is his normal practice."[2]  (Doc. No. 23, at 9.)  Barclay rejects this

excuse, arguing that "[e]ngagement in settlement negotiations is not a sufficient reason for

failure to plead."  (Doc. No. 21, at 6; Doc. No. 28, at 9–11.)

      For support, Barclay cites two distant district court cases:  Mitchell v. Eaves, 24

F.R.D. 434 (E.D. Tenn. 1959) and United States v. Topeka Livestock Auction, Inc.,

392 F. Supp. 944 (N.D. Ind. 1975).  (Id.)  Hailing from other jurisdictions, neither decision is

binding upon this Court.  In Mitchell, the court observed, apropos of nothing, that "a hope of

settlement does not justify a failure to obtain an extension of time to answer," then set aside the

entry of default all the same "since a trial on the merits is much to be preferred to a default."

Mitchell, 24 F.R.D. at 435.  In Topeka, the court found that the defendant had failed to offer any

evidence of settlement negotiations, then passively observed, "in any event, it has been said that

ongoing settlement negotiations are not a sufficient reason for a failure to file an answer," citing

Mitchell for the saying.  Topeka Livestock Auction, Inc., 392 F. Supp at 950-51.  Accordingly,

---

    [2] Neither Webster's Third New International Dictionary nor the Oxford English
Dictionary classify "diary" as a verb.  Presumably, "diary" in this sense is roughly synonymous
with "record," e.g., counsel did not record the deadline on his calendar.

both cases are not only non-binding, but unpersuasive, and do nothing to upset the proffered

excuse for untimely filing—namely, that the prospect of an out-of-court settlement distracted

counsel for Land O'Lakes from the operative deadline.  Thus, while this Court has every "desire

to see the rules being adhered to and process respected," In re Arthur Treacher's Franchise

Litig., 92 F.R.D. 398, 418 (E.D. Pa. 1981), there is simply no basis upon which to conclude that

counsel's actions were taken willfully or in bad faith or, for that matter, were borne of anything

other than mere negligence.

### B.    Meritorious Defense

Barclay further argues that Land O'Lakes "inappropriately relies upon general denials

and conclusory statements" in its answer and therefore lacks a meritorious defense.

(Doc. No. 21, at 7; see also Doc. No. 28, at 6–8.)  Acknowledging that its answer "did not

contain a recitation of specific facts," Land O'Lakes nonetheless asserts that its factual

averments, when read in conjunction with its third and fourth affirmative defenses, which rest

upon a theory of comparative negligence, present a meritorious defense.[3]  (Doc. No. 23, at 17.)

Here, too, Barclay cites to cases of dubious import, only one of which, United States v.

$55,518.05 in U.S. Currency, 728 F.2d 192 (3d Cir. 1984), carries any force.  In $55,518.05 in

U.S. Currency, the Third Circuit held that "[t]he showing of a meritorious defense is

accomplished when 'allegations of defendant's answer, if established on trial, would constitute a

complete defense to the action.'"  Id. at 195 (citing Tozer v. Charles A. Krause Milling Co.,

189 F.2d 242, 244 (3d Cir. 1951)).  The assertion by Barclay that Land O'Lakes relies upon

---

[3] In its brief in opposition, Land O'Lakes refers to "Affirmative Defenses 3–5."
(Doc. No. 23, at 17.)  Its answer, however, contains only four affirmative defenses, the third and
fourth of which allege comparative negligence.  (Doc. No. 13, at 2.)

nothing but "general denials and conclusory statements" in presenting a defense is, however, an inaccurate one.

In its answer, Land O'Lakes specifically alleges that "Plaintiff possessed, used, and was in control of its own vehicle at the time of the accident[,] . . . may have failed to mitigate its damages, if any," (Doc. No. 13, at 1–2) and that "comparative negligence bars or limits [Plaintiff's] recovery, if any" (Id. at 2). Thus, while it may not be a model of responsive pleading, Land O'Lakes' answer most certainly contains allegations which go "beyond [a] general denial," 728 F.2d at 195, and, "if established on trial, would constitute a complete defense to the action,'" id. at 192 (citation omitted). Cf. Pa. Cons. Stat. Ann. § 7102 (West 2008) ("[T]he fact that the plaintiff may have been guilty of contributory negligence *shall not bar a recovery* by the plaintiff or his legal representative *where such negligence was not greater than the causal negligence of the defendant or defendants . . . .*" (emphasis added)). As to whether these allegations are too "general" or "conclusory " (Doc. No. 21, at 7), as Barclay contends, it is instructive to note that Pennsylvania law put Land O'Lakes under no obligation to plead such a defense. See Pa. R. Civ. P. 1030 ("The affirmative defenses of assumption of the risk, comparative negligence and contributory negligence need not be pleaded [in a responsive pleading]."); see also Mike Rosen & Assocs., P.C. v. Omega Builders, Ltd., 940 F. Supp. 115, 120–21 (E.D. Pa. 1996) (concluding that, "[i]n cases where default judgment has not been entered, courts in this circuit seem unwilling to deny the motion to set aside entry of default solely on the basis that no meritorious defense exists"). Nevertheless, insofar as "trial courts are permitted a great deal of latitude in exercising their discretion as to what constitutes a showing of meritorious defense," the Court is thoroughly satisfied that Land O'Lakes has proffered a

meritorious defense.  6 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 1488 (3d ed.

1998) (quoting <u>Trueblood v. Grayson Shops of Tennessee, Inc.</u>, 32 F.R.D. 190, 196 (E.D. Va.

1963)).  <u>Compare</u> <u>In re Arthur Treacher's Franchise Litig.</u>, 92 F.R.D. 398, 416, 417–18 (E.D. Pa.

1981) (explaining that "the Court [could not] agree with plaintiff's specific conclusion that a

meritorious defense is absent in the present case" despite "the allegations in the Complaint

[being] somewhat general in nature") <u>with</u> <u>United States v. $55,518.05 in U.S. Currency,</u>

728 F.2d 192, 196–97 (3d Cir. 1984) (refusing to set aside entry of default judgment where

appellant's answer consisted of nothing more than "a mere recitation of the relevant statutory

language" and not "a word suggesting even one alleged fact that might provide an inference of a

meritorious defense").  Indeed, "it is sufficient that [Land O'Lakes'] proffered defense is not

'facially unmeritorious.'"  <u>Emcasco Ins. Co. v. Sambrick</u>, 834 F.2d 71, 74 (3d Cir. 1987)

(citation omitted).

### C.    Prejudice

Lastly, Barclay mounts a one-sentence argument to the effect that it is "[unable] to

determine whether it is prejudiced" because it "cannot know what evidence may have been lost

by Land O'Lakes or what witnesses may be no longer available in light of the default and Land

O'Lakes [sic] delay."  (Doc. No. 28, at 6).[4]  Whatever Barclay might mean by the foregoing, the

inability to determine whether one would in fact suffer prejudice or a conjectural remark that

evidence or witnesses "may be no longer available" and nothing more is not the sort of "true

---

[4] Having made no mention of prejudice in its brief in support (Doc. No. 21), Barclay
brings the argument in its reply brief under the nearly impenetrable heading of "Plaintiff's
Inability To Determine If It Is Prejudiced On The Basis That It Cannot Determine If Evidence
Has Been Lost Or Witnesses Are Now Unavailable In Light Of Defendant's Delay Weighs In
Favor Of Plaintiff And Entry Of Default," (Doc. No. 28, at 6).

prejudice" that weighs in favor of entering default judgment.  Scarborough v. Eubanks, 747 F.2d 871, 876 (3d Cir. 1984).  "Examples of such prejudice are the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party."  Id.  That Barclay is unable to demonstrate any such prejudice hardly comes as a surprise:  "Delay in realizing satisfaction on a claim rarely serves to establish [a sufficient] degree of prejudice . . . at an early stage of the proceeding."  Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656-57 (3d Cir. 1982).  Answering a complaint ten days late, as in this case, does not warrant "the 'extreme' sanction of dismissal or default."  Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 870 (3d Cir. 1984) (citing Nat'l Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976).  See, e.g., Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 75 (3d Cir. 1987) (holding that a delinquency of six weeks "did not warrant the 'extreme' action of refusal to vacate the default judgment" (quoting Poulis, 747 F.2d at 867));  Scarborough v. Eubanks, 747 F.2d 871, 876 (3d Cir. 1984) ("Certainly the one or two week delay . . . , while unjustified, did not cause any defendant prejudice.").

### D.    Alternative Sanctions

Having found that all three factors weigh in favor denying the instant motion, the Court must next consider the possibility of sanctions less severe than the entry of default judgment.  Emcasco, 834 F.2d at 73.  The Third Circuit Court of Appeals has long admonished district courts to evaluate such sanctions when passing upon a motion for entry of default or default judgment.  See, e.g., Emcasco, 834 F.2d at 75–76; Gross v. Stereo Component Sys., Inc.,

700 F.2d 120, 122 (3d Cir.1983) (faulting district court for failing to evaluate alternative sanctions).

Backing away from the legal thicket to better gain some perspective, one cannot help but be struck by the "David-and-Goliath" relationship of the two parties.  As Barclay notes in its brief, "Land O'Lakes is a sophisticated international corporation that was provided ample notice to serve a responsive pleading or otherwise defend against Barclay's lawsuit.  In contrast, Barclay is a small company that operates primarily within Pennsylvania."  (Doc. No. 28, at 8 (citations omitted).)  Such comparisons do nothing to alter the equation with regard to the propriety of default judgment, and it almost goes without saying that the Court expects all litigants, regardless of their stature, to respect to the rules of procedure and observe any relevant deadlines.  However, inadvertent failures of this sort are hardly unprecedented, and counsel for Land O'Lakes has a long history of competent and diligent representation in this Court and no record of sanctions.

## III.    CONCLUSION

For the foregoing reasons, the Court will deny Barclay's motion for entry of default judgment (Doc. No. 14), grant Land O'Lakes' motion (Doc. No. 16) for leave to file its answer (Doc. No. 13) nunc pro tunc, and direct the Clerk of Court to set aside the entry of default (Doc. No. 11).

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARCLAY TRANSPORTATION,** | : | |
| **Plaintiff** | : | **Civil Action No. 1:07-cv-02065** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **LAND O'LAKES, INC.,** | : | |
| **Defendant** | : | |

## <u>ORDER</u>

**AND NOW**, on this 30th day of September 2008, upon due consideration of Plaintiff

Barclay Transportation's motion for entry of default judgment (Doc. No. 14) and Defendant

Land O'Lakes, Inc.'s motion (Doc. No. 16) for leave to file its answer (Doc. No. 13) nunc pro

tunc, and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT**:

1.  Barclay Transportation's motion for entry of default judgment (Doc. No. 14) is **DENIED**;

2.  Defendant Land O'Lakes, Inc.'s motion (Doc. No. 16) for leave to file its answer (Doc. No. 13) nunc pro tunc is **GRANTED**; and

3.  The Clerk of Court shall **SET ASIDE** the entry of default (Doc. No. 12).

       S/ Yvette Kane
       Yvette Kane, Chief Judge
       United States District Court
       Middle District of Pennsylvania